# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

MICHAEL SCIORE, et al.,                     Civil Action No. 19-13775

        Plaintiffs,

                             **OPINION**

   v.

KELLY PHUNG, et al.,

        Defendants.

---

**APPEARANCES**:

DAVID D. LIN
LEWIS & LIN LLC
77 SANDS STREET
6TH FLOOR
BROOKLYN, NY 11201

    *Counsel on behalf of Plaintiffs*

MATTHEW ADAM GREEN
JOSHUA BENJAMIN KAPLAN
OBERMAYER REBMANN MAXWELL & HIPPELL LLP
1120 ROUTE 73
SUITE 420
MOUNT LAUREL, NJ 08054

    *Counsel on behalf of Defendants Kelly Phung, Studio KP,*
    *LLC, and Peter Ly*

ARIJ H. SYED
ORLOVSKY MOODY SCHAAF CONLON & GABRYSIAK
MONMOUTH PARK CORPORATE CENTER
187 HIGHWAY 36
WEST LONG BRANCH, NJ 07764

    *Counsel on behalf of Defendant Rachele Tran and Sidney Tran*

KEVIN CHING
1309 SOUTH REESE STREET
PHILADELPHIA, PA 19147

*Defendant Kevin Ching appearing pro se*

**HILLMAN**, **District Judge**

Presently before the Court are the motions to dismiss Plaintiffs' Amended Complaint filed by *pro se* Defendant Kevin Ching ("Ching") and Defendant Peter Ly ("Ly") (collectively "Defendants"). [Dkt. Nos. 87 and 94 respectively]. Defendant Ching seek to dismiss Plaintiffs' Amended Complaint pursuant to Rule 12(b)(2) for lack of personal jurisdiction, or, in the alternative, pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Defendant Ly also seeks dismissal pursuant to Rule 12(b)(6).

Plaintiffs Michael Sciore and Old City Pretzel Company, LLC (collectively "Plaintiffs") oppose the Ly motion, [Dkt. No. 106], as well as oppose the Ching motion, and cross-move to transfer the case against Defendant Ching to the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1631. [Dkt. No. 98].

The Court has considered the parties' submissions and decides these matters pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, Defendant Ching's motion to dismiss for lack of personal jurisdiction will be

2

granted, Plaintiffs' motion to transfer will be denied, and the Court will grant Defendant Ly's motion for failure to state a claim upon which relief can be granted.

## BACKGROUND

The facts and procedural history of this case are well-known to the parties and have been fully detailed in the Court's January 18, 2021 Opinion, [Dkt. No. 53]. Accordingly, the Court adopts that background and will not restate the full history here.

This case concerns negative restaurant reviews posted on Yelp.com ("Yelp") about the now defunct restaurant Ardiente. Amended Complaint, [Dkt. No. 55], at ¶ 1. Ardiente is the registered fictious name for Plaintiff Old City Pretzel Company, LLC, a limited liability company of which Plaintiff Sciore, a New Jersey citizen, was the sole member. Ardiente was located in Philadelphia, Pennsylvania. Id. at ¶¶ 5-6.

Plaintiffs allege that on July 7, 2018, Defendant Ly posted the following negative restaurant review ("Ly review") about Ardiente on Yelp:

> Not highly recommended for having parties, birthdays, or any type of events here because they will run out of food even though they say it's "unlimited" (you'll be lucky if you even get enough food to begin with). A friend of ours planned a birthday dinner here a month in advance for her husband and a group of 40 people. As promised, there will be unlimited food but

3

drinks will be charged separately by the
establishment.  As the night started,
everyone's ordering drinks and having a good
time until [sic] food started coming out.
There was countless number of carbs and
veggie dishes of the same 3-4 items but when
we had meats come out, it was literally 4
people to 2 pieces of chicken or 4 people to
1 piece of rib.  Let alone there wasn't even
enough meats to be given to each person for
them to say "we ran out". [sic]  After
confronting the owner, he goes I understand
this table didn't get it, but do understand
what the other tables got
(LOL Tf exactly), what does that have to do
with the table that didn't get jack sh*t?
Mind you it was suppose [sic] to be
unlimited food since it was a preset menu,
but they "ran out."  Also to mention, the
meats, portioned for mice, took nearly 45
mins to come out following the countless
UNLIMITED amount of carb dishes (i [sic] get
it [sic] restaurants that do this is [sic]
trying to get you full before the meats come
out), but again, the meats that came out
wasn't even enough to begin with.  Finally,
the bill came out close to $5000 for having
mediocre drinks, unlimited carbs and grass,
and 2 pieces of meat for 40 people to share.
After reducing the price, it came to 100 a
person, in which [sic] still can't be
justified for what was given to us.  At the
end, following the dispute, they had the
audacity to just bring two plates of ribs
when everyone had already lost their
appetite from waiting too long, and yes it
was left there and no one ate anyone [sic]
it.  Following the whole "party" many of us
went and got pizza because we were obviously
still hungry.  Def not a place to go with
this type of hospitality.

Amended Complaint, [Dkt. No. 55], at ¶¶ 27-28.

Plaintiffs' Complaint avers the above allegations are false

statements of fact that cannot be interpreted as opinion.

Plaintiffs claim Defendant Ly posted his review to harm Plaintiffs' reputation and to cause them to lose revenue.

Plaintiffs further allege that on July 15, 2018, Defendant Ching posted the following negative restaurant review ("Ching review") about Ardiente on Yelp:

> Had high expectations after perusing their menu and reading prior reviews beforehand. However, not only was I disappointed but insulted by how our party was treated from the owner himself.  Food itself was mediocre and too salty to be palatable.  Our first 5-6 courses of the tasting menu consisted of underwhelming veggie or carb dishes.  The last two courses were supposed to be the short ribs and Cornish hen but they ran out after serving only a few morsels of each. How this restaurant failed to prepare for this event with a month's notice is beyond me and will steer clear from this place indefinitely.

Id. at ¶¶ 76-77.

Plaintiffs' Complaint repeats the same allegations regarding the Ching review as it alleged towards the Ly review, namely that the review contains false statements of fact that cannot be interpreted as opinion, and that Defendant Ching sought to harm Plaintiffs' reputation and to cause them to lose revenue.

In response to the Ly and Ching reviews, as well as other reviews, Plaintiffs filed a complaint in August of 2018 (this was a prior case, naming only Kelly Phung, Studio KP LLC, and John Doe fictious parties).  Plaintiffs thereafter initiated

this matter, filing the underlying complaint on June 14, 2019.
Both cases concerned claims of defamation and, based on this
underlying claim for defamation, a claim of tortious
interference with contractual relations and prospective
contractual relations.  On February 17, 2021, Plaintiffs filed
the First Amended complaint, which is presently the operative
pleading and is the first pleading to name as Defendants Ching,
Ly, Rachele Tran, Sidney Tran, Michelle Nguyen Tran, Irine Tran,
and Thao Tran (whose identities were unknown by Plaintiffs until
recently).

        On April 27, 2021, Defendants Irine Tran, Sidney Tran, and
Rachele Tran filed answers to the first amended complaint.  On
May 13, 2021, Defendant Ching filed his motion to dismiss.
Ching Motion to Dismiss ("Ching MTD"), [Dkt. No. 87].  On May
25, 2021, Defendant Ly filed his motion to dismiss.  Ly Motion
to Dismiss ("Ly MTD"), [Dkt. No. 94].  Plaintiffs opposed
Defendant Ching's motion to dismiss and cross-moved to transfer
their case against him to the United States District Court for
the Eastern District of Pennsylvania.  Plaintiffs' Brief in
Opposition to Ching ("Ching Opp. Br."), [Dkt. No. 98-6].

        On June 22, 2021, Plaintiffs filed opposition to Defendant
Ly's motion to dismiss.  Plaintiffs' Brief in Opposition to Ly
("Ly Opp. Br."), [Dkt. No. 106].  Both Defendants Ching and Ly
have filed briefs in reply to Plaintiffs' opposition to the

requested relief, and, with leave of the Court, Plaintiffs filed
a sur-reply in support of their opposition to Defendant Ching's
motion to dismiss and cross-motion to transfer.  The parties'
motions are therefore ripe for adjudication.

## DISCUSSION

### A.   Subject Matter Jurisdiction

This Court exercises subject matter jurisdiction over this
matter pursuant to 23 U.S.C. § 1332 because there is complete
diversity of citizenship, and the amount in controversy exceeds
$75,000.  See Amended Complaint, [Dkt. No. 55], at ¶¶ 5-17 and
Prayer for Relief ¶ 5.

### B.   Standard of Review

#### 1.   Ly's Motion to Dismiss Pursuant to Rule 12(b)(6)

Defendant Ly's motion to dismiss is governed by Fed. R.
Civ. P. 12(b)(6).

When considering a motion to dismiss a complaint for
failure to state a claim upon which relief can be granted, a
court must accept all well-pleaded allegations as true and view
them in the light most favorable to the plaintiff.  Evancho v.
Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled
that a pleading is sufficient if it contains "a short and plain
statement of the claim showing that the pleader is entitled to
relief."  Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (first citing Conley v. Gibson, 355 U.S. 41, 47 (1957); Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994); and then citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

To determine the sufficiency of a complaint, a court must take three steps: (1) the court must take note of the elements a plaintiff must plead to state a claim; (2) the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664, 675, 679 (2009) (alterations, quotations, and other citations omitted).

"[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the

plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder."  Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)).  Thus, a court asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." Id. (quoting Scheuer, 416 U.S. at 236).

"A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'"  Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at 570); see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provide[d] the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before Twombly.").  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [party] has acted unlawfully."  Iqbal, 556 U.S. at 678.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).  It is ultimately the defendant, however, that bears the burden of showing that no claim has been presented.  Hedges v. United

States, 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages,

Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

   **2.   Ching's Motion to Dismiss Pursuant to Rule 12(b)(2)**

   Defendant Ching's motion to dismiss is governed by Fed. R.

Civ. P. 12(b)(2).

   After a motion to dismiss is filed pursuant to Fed. R. Civ.

P. 12(b)(2), the burden shifts to the Plaintiff to provide

sufficient facts to establish jurisdiction.  See O'Connor v.

Sandy Lane Hotel Co., 496 F.3d 312, 316 (3d Cir. 2007) (citing

Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001)).

The Plaintiff must "sustain its burden of proof in establishing

jurisdictional facts through sworn affidavits or other competent

evidence" and cannot rely "on the bare pleadings alone in order

to withstand a defendant's Rule 12(b)(2) motion to dismiss for

lack of in personam jurisdiction."  Weber v. Jolly Hotels, 977

F. Supp. 327, 331 (D.N.J. 1997).  At the same time, however,

courts must "accept all of the plaintiff's allegations as true

and construe disputed facts in favor of the plaintiff."

Carteret Sav. Bank v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir.

1992).

   "When a district court is sitting in diversity, it 'may

assert personal jurisdiction over a nonresident defendant to the

extent allowed under the law of the forum state.'"  Koch v.

Pechota, 744 F. App'x 105, 109 (3d Cir. 2018) (quoting Metcalfe

10

v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009)).
The New Jersey long-arm statute "provides for jurisdiction
coextensive with the due process requirements of the United
States Constitution." Id. at 110 (quoting Miller Yacht Sales,
Inc. v. Smith, 384 F.3d 93, 96 (3d Cir. 2004)). "New Jersey
courts [therefore] look to federal law to interpret the limits
on personal jurisdiction." Id. (citing IMO Indus. v. Kiekert
AG, 155 F.3d 254, 259 (3d Cir. 1998)).

Federal due process requires that a defendant have "certain
minimum contacts with [the forum state] such that the
maintenance of the suit does not offend 'traditional notions of
fair play and substantial justice.'" Int'l Shoe Co. v.
Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer,
311 U.S. 457, 463, (1940)). A defendant establishes minimum
contacts by "purposefully avail[ing] itself of the privilege of
conducting activities within the forum State," thereby invoking
"the benefits and protections of [the forum State's] laws."
Asahi Metal Indus. Co. v. Superior Ct., 480 U.S. 102, 109 (1987)
(quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475
(1985)). This "purposeful availment" requirement assures that
the defendant could reasonably anticipate being haled into court
in the forum and is not haled into a forum as a result of
"random," "fortuitous," or "attenuated" contacts with the forum

11

state.  Burger King, 471 U.S. at 472, 475; see also World-Wide

Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

There are two types of personal jurisdiction that satisfy

the minimum contacts standard: specific and general

jurisdiction.  Koch, 744 F. App'x at 110.  "A court has specific

jurisdiction when the suit 'arises out of or relate[s] to the

defendant's contacts with the forum.'"  Id. (quoting Goodyear

Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 923-24

(2011)).  "[A] court has general jurisdiction . . . when a

defendant's 'affiliations with the State are so "continuous and

systematic" as to render them essentially at home in the forum

State.'"  Id. (quoting Goodyear, 564 U.S. at 919).  As such,

general jurisdiction does not require the cause of action to

have a relationship with the defendant's forum contacts.

C.  **Analysis**

1.  **Ly's Motion to Dismiss Pursuant to Rule 12(b)(6)**

a.  **Plaintiffs' Defamation Claim Against Ly**

Plaintiffs assert a claim for defamation against Ly,

alleging the Ly review was a knowingly and maliciously false

statement published on Yelp to third parties about Plaintiffs

and that said statement was intended to harm Plaintiffs'

reputation and business activities.  Defendant Ly responds by

arguing the Amended Complaint fails to sufficiently plead a

claim for defamation and must be dismissed because: (1) the Ly

review is just that, a restaurant review, constituting nothing more than the author's opinions about the quality of the restaurant; (2) the hyperbolic words and phrases do not give rise to a defamation claim; and (3) even if the review contains statements of fact, said statements are not defamatory because they are objectively unverifiable.  The Court agrees with all three of Ly's arguments.

To plead a *prima facie* case of defamation under New Jersey law,[1] "a plaintiff must establish (1) the assertion of a false and defamatory statement concerning the plaintiff, (2) the unprivileged publication of that statement to a third party, (3) fault amounting to at least negligence by the publisher, and (4) damages."  Robles v. U.S. Envt. Universal Serv., Inc., 469 Fed. App'x 104, 109 (3d Cir. 2012) (citing DeAngelis v. Hill, 180 N.J. 1, 12-13 (2004)); Leang v. Jersey City Bd. of Educ., 198

---

[1] As the parties present their arguments under New Jersey law, they tacitly agree that New Jersey law applies, and as they fail to argue otherwise, the Court applies New Jersey law to this matter.  Indeed, a court sitting in diversity must apply the substantive law of the forum.  Robeson Indus. Corp. v. Hartford Accident & Indem. Co., 178 F.3d 160, 165 (3d Cir. 1999). However, the Court recognizes that New Jersey conflict-of-law analysis might suggest that the Commonwealth of Pennsylvania have a greater interest in this action.  Nonetheless, there is "no conflict between New Jersey and Pennsylvania law: both rely on the Restatement (Second) of Torts and require similar elements for defamation."  Kerrigan v. Otsuka Am. Pharm., Inc., 560 Fed. App'x 162, 167 (3d Cir. 2014).  Thus, the Court is confident in its application of New Jersey law because there is no material difference between New Jersey and Pennsylvania law as it relates to Plaintiff's core claim of defamation.

N.J. 557, 585 (2009).  The elements of defamation in New Jersey comport with the Restatement (Second) of Torts.  DeAngelis, 180 N.J. at 12.

As to the first element, a viable defamation claim must show that the statements at issue were defamatory in nature, which is a question of law for the Court.  Reed v. Scheffler, 218 F. Supp. 3d 275, 282 (D.N.J. 2016) (citing Ward v. Zelikovsky, 136 N.J. 516 (1994)).  As determined by the Supreme Court of New Jersey, "[w]hether a statement is defamatory depends on its content, verifiability, and context."  Lynch v. N.J. Educ. Ass'n, 161 N.J. 152, 167-68 (1999) (citing Ward, 136 N.J. at 529).  Assessing a statement's content "involves consideration not merely of a statement's literal meaning, but also of the fair and natural meaning that reasonable people of ordinary intelligence would give to it."  Lynch, 161 N.J. at 167.  Thus, "the critical consideration is what a reasonable reader would understand the statement to mean."  Id. (citing Milkovich v. Lorain Journal Co., 497 U.S. 1, 17 (1990)).  In addition, in assessing the content, courts will "distinguish 'between genuinely defamatory communications as opposed to obscenities, vulgarities, insults, epithets, name-calling, and other verbal abuse.'"  Ward, 136 N.J. at 530 (citation omitted).  "Loose, figurative or hyperbolic language is not likely to imply

14

specific facts, and thus is not likely to be deemed actionable."
Lynch, 161 N.J. at 168 (citing Ward, 136 N.J. at 532).

Further effecting a statement's content, is the context in
which it is issued, since "[t]he context of a statement can
affect significantly its fair and natural meaning."  Lynch, 161
N.J. at 168 (citing Ward, 136 N.J. at 532).  The third level of
analysis, namely verifiability, goes to whether the statement is
one of fact or opinion, because statements of opinion, which
cannot be proved true or false, like unverifiable statements of
fact, are not actionable.  Lynch, 161 N.J. at 167.

While opinions are not necessarily afforded "a wholesale
defamation exemption," Milkovich, 497 U.S. at 18; see also Ward,
136 N.J. at 531, opinions are not defamatory "unless they imply
false underlying objective facts."  Lynch, 161 N.J. at 168
(citing Restatement (Second) of Torts § 566 (1977)).  "The
higher the 'fact content' of a statement, the more likely that
the statement will be actionable."  Id. at 531-32 (citation
omitted).  The Supreme Court of New Jersey identifies an opinion
as a statement "based on stated facts or facts that are known to
the parties or assumed by them to exist," Dairy Stores, Inc. v.
Sentinel Publ'g Co., 104 N.J. 125, 147 (1986) (citations
omitted); while a "mixed opinion" is a statement "not based on
facts that are stated or assumed by the parties to exist," id.
at 147-48.  Importantly, defendants are not held liable if the

15

statement can be construed as either fact or opinion.  Lynch,
161 N.J. at 168.  And, a defendant will not be held liable for
an opinion that is "accompanied by its underlying nondefamatory
factual basis."  Kotlikoff v. The Community News, 89 N.J. 62,
72-73 (1982).

The Court finds that the challenged Ly statement does not
constitute defamation under any of the standards discussed
above.  It is undisputed that the Ly review was published on
Yelp in the form of a restaurant review regarding Ly's
experience dining at Ardiente.  Accordingly, after assessing the
contents, context, and verifiability, the challenged review
constitutes a statement of opinion rather than fact, making it
not defamatory.

### i.   Context of the Ly Review

Beginning with the context of the Ly review, the Court
notes that the allegedly defamatory statement is first and
foremost a restaurant review, and, second, the statement is a
Yelp review.  These two lenses help focus this Court's analysis.

As pertains to the ordinary understanding and context of
reviews on Yelp, a recent opinion from the United States
District Court for the Eastern District of New York is
informative.  See Mirza v. Amar, 513 F. Supp. 3d 292 (E.D.N.Y.
2021).  There, a medical practice and its operating physician
brought an action for defamation, trade libel, and tortious

16

interference with contractual relations against a patient who
had written a negative review on Yelp.  In addition to
considering the content, Judge Cogan of that court also
considered the context of the review, which he found to be a
nondefamatory opinion, holding:

> Here, the context is a review on Yelp, an
> Internet forum.  "New York courts have
> consistently protected statements made in
> online forums as statements of opinion
> rather than fact."  Ganske[ v. Mensch,] 480
> F. Supp. 3d [542,] 552 [(S.D.N.Y. 2020)].
> Statements made on Internet forums are made
> in a unique context in that they are
> generally informal and unedited.  See id.
> This context leads "readers [to] give less
> credence to allegedly defamatory remarks
> published on the Internet than to similar
> remarks made in other contexts."  Id.
> (quoting Sandals Resorts Int'l Ltd. v.
> Google, Inc., 86 A.D. 3d 32, 44, 925
> N.Y.S.2d 407 (1st Dep't 2011)).  That
> defendant's allegedly defamatory statements
> appeared on Yelp – an Internet forum
> specifically designed for the publication of
> crowd-sourced opinionated reviews about
> businesses – "conveys a strong signal to a
> reasonable reader" that the statements are
> defendant's opinion.  Id.  When a posting
> "viewed in its full context, reveals that
> defendant is a disgruntled consumer and that
> [her] statements reflect [her] personal
> opinion based upon [her] personal dealing
> with plaintiff," the context strongly
> suggests that the statements are merely
> "subjective expressions of consumer
> dissatisfaction" and thus nonactionable
> opinion.  Penn Warranty Corp. v. DiGiovanni,
> 10 Misc. 3d 998, 1005, 810 N.Y.S.2d 807, 815
> (Sup. Ct. 2005).
>
> Because Yelp reviews are used by consumers
> to provide their positive or negative

> opinions of businesses, the context strongly
> signals to readers that the review merely
> reflects the writer's opinion.  As described
> below, the allegedly defamatory statements
> here do not overcome that context and are
> not actionable.  Defendant's language is
> full of opinion and hyperbole and, to the
> extent that any isolated statement within
> the review might be construed as factual,
> when the review is read as a whole and in
> context, the message conveyed is merely the
> negative but protected opinion of a
> disgruntled customer.

Mirza, 513 F. Supp. 3d at 297-98.  The Court views Ly's review

in the same light.  In the context of Yelp, a reasonable reader

would understand that the review at issue here was Defendant

Ly's subjective opinion as a disgruntled customer.

Turning next to the context of restaurant reviews and how

this field of publication may inform the Court's analysis, the

Court again turns to the views of New York courts, which appear

particularly well-versed in actions for defamation based on

negative restaurant reviews.  For example, a panel of the

Supreme Court of New York, Appellate Division, First Department

plainly held that "restaurant ratings and reviews almost

invariably constitute expressions of opinion."  Themed

Restaurants, Inc. v. Zagat Survey, LLC, 801 N.Y.S.2d 38, 39-40

(1st Dep't 2005).[2]  Likewise, in the more seminal decision of Mr.

---

[2] Themed Restaurants, Inc. concerned claims of defamation and
trade libel by a restaurant against the restaurant review survey
Zagat for publishing a review that stated, "God knows 'you don't
go there for the food,'" and "weary well-wishers suggest that

Chow of New York v. Ste. Jour Azur S.A., the Second Circuit
vacated judgment and remanded the case back to the district
court with instructions to dismiss the complaint because the
Defendant-Appellants' negative restaurant review was opinion and
Plaintiff-Appellee had failed to demonstrate how even the one
factual averment contained within the review was in any way
defamatory.  759 F.2d 219 (2d Cir. 1985).

The Defendants in Mr. Chow of New York included the
publisher of a restaurant guide called the Gault/Millau Guide to
New York and the guide's two editors.  759 F.2d at 221.
Contained within the guide was a negative review of the New York
restaurant Mr. Chow.  Id.  The review made several negative
statements, which are more or less analogous to the instant
action, for example: (1) the review noted that the owner Mr.
Chow is "clever" from a culinary perspective for opening a
Chinese restaurant that is not actually about eating Chinese
food – let alone good Chinese food; (2) the review called the
restaurant chain's London branch "clearly overrated;" (3) the
review claimed the service is bad since you will "have to wait

---

they 'freshen up the menu and their makeup.'"  Themed
Restaurants, Inc., 801 N.Y.S.2d at 39-40.  The appellate panel
found the "allegedly libelous statements can only be construed
as statements of opinion and thus are constitutionally protected
. . . [particularly since] restaurant ratings and reviews almost
invariably constitute expressions of opinion."  Id. (citations
omitted).

ten minutes to obtain chop-sticks" and because "it is impossible to have the basic condiments (soy sauce, hot sauce, etc.) on the table;" (4) the review claimed the "principal concern of the waiters (Italians) is to sell you expensive alcoholic drinks;" and (5) the review was highly critical of the food, stating the food is not only bad but has "only the slightest relationship to the essential spirit of Chinese cuisine," with descriptions like: (a) "heavy and greasy dough" that "resembled bad Italian ravioli;" (b) "disturbingly gamy taste;" (c) "contain[ing] more dough (badly cooked) than meat;" (d) "remained still frozen on the plate;" (e) "rubbery . . . soaking . . . totally insipid;" (f) Peking duck prepared in one form instead of the traditional three ways, which included "pancakes the size of a saucer and the thickness of a finger;" and (g) "egg-rolls the thickness of andouillette sausages, and the dough the thickness of large tagliatelle."  Id. at 221-22.

Assessing this review, the Second Circuit found that five of the six allegedly defamatory statements submitted to the jury were pure opinion, and that the only non-opinion, factual statement, namely that Mr. Chow served the duck one way instead of three, was not shown to be defamatory.  In reaching this conclusion, the Second Circuit specifically found that restaurant reviews are, as they are understood by a reasonable reader and by their very nature, largely opinion:

20

> Restaurant reviews are also the well
> recognized home of opinion and comment.
> Indeed, "[b]y its very nature, an article
> commenting upon the quality of a restaurant
> or its food, like a review of a play or
> movie, constitutes the opinion of the
> reviewer." Greer v. Columbus Monthly Pub.
> Corp., 4 Ohio App.3d 235, 238 (1982).  The
> natural function of the review is to convey
> the critic's opinion of the restaurant
> reviewed: the food, the service, the décor,
> the atmosphere, and so forth.  Such matters
> are to a large extent controlled by personal
> tastes.  The average reader approaches a
> review with the knowledge that it contains
> only one person's views of the
> establishment.

Mr. Chow of New York, 759 F.2d at 227-28.

The Court agrees with the Second Circuit's reasoning and

finds that the context of the Ly review, as a restaurant review,

strongly supports Ly's argument that the review is a

nondefamatory opinion.  Further, Plaintiffs here, like the

Plaintiff-Appellee in Mr. Chow of New York, fail to cite a

single case that found a restaurant review libelous.  Granted,

Ly only cites an unpublished, out-of-district opinion.[3]

Nonetheless, the Court's independent research reveals a

significant weight of authorities holding restaurant reviews as

nondefamatory opinion.  In addition to the aforementioned New

---

[3] See Clancy v. Vacation Estates, Inc., No. 18-cv-2249, 2019 WL
955113, at *11 (D. Minn. Feb. 27, 2019) (holding the Google
restaurant review of "[l]ow quality food, cold fries, soggy fish
and undercooked hamburgers," to be "subjective descriptions that
constitute opinions, not defamation").

York cases, in Mr. Chow of New York, the Second Circuit cites to numerous other cases that reached similar decisions.  759 F.2d at 228 n.7 (citing Golden v. Elmira Star Gazette, 9 Med.L.Rep. (BNA) 1183 (N.Y.Sup.Ct. Ontario County 1983); Greer v. Columbus Monthly Publishing Corp., 4 Ohio App.3d 235, 448 N.E.2d 157 (1982); Kuan Sing Enterprises v. T.W. Wang, Inc., 86 A.D.2d 549, 446 N.Y.S.2d 76 (1st Dep't), aff'd, 58 N.Y.2d 708, 444 N.E.2d 1008, 458 N.Y.S.2d 544 (1982); Pritsker v. Brudnoy, 389 Mass. 776, 452 N.E.2d 227 (1983); Havalunch, Inc. v. Mazza, 294 S.E.2d 70 (W.Va.1981); Ihle v. Florida Publishing Co., 5 Med.L.Rep. (BNA) 2005 (Fla.Cir.Ct.1979); Mashburn v. Collin, 355 So.2d 879 (La.1977); Steak Bit of Westbury, Inc. v. Newsday, Inc., 70 Misc.2d 437, 334 N.Y.S.2d 325 (Sup.Ct. Nassau County 1972); Twenty-Five East 40th Street Restaurant Corp. v. Forbes, Inc., 37 A.D.2d 546, 322 N.Y.S.2d 408 (1st Dep't 1971), aff'd, 30 N.Y.2d 595, 331 N.Y.S.2d 29, 282 N.E.2d 118 (1972)).  While none of the cases mentioned above are binding authority in this court, the aforementioned rulings on the context of Yelp reviews and restaurant reviews is highly persuasive in assessing the case at bar.

Therefore, the Court finds the context of the Ly review strongly supports Ly's argument that the review is a nondefamatory opinion.  This alone provides a sufficient and independent basis for the conclusion that the Ly review does not

support a valid claim, though the content and verifiability issues also support the Court's conclusion.

### ii.    Content and Verifiability of the Ly Review

Turning next to the Ly review's actual statements, the Court finds the review's content and verifiability support Ly's argument that the review is a nondefamatory opinion.  As a preliminary matter, Plaintiffs fail to specify which parts of the allegedly defamatory Ly review are false or constitute defamation.  Thus, the Court will assess the statement in its entirety.[4]

While select portions of various statements may be verifiable, the overwhelming majority of the Ly review is pure opinion.  More importantly, after applying the literal meaning as well as the fair and natural meaning that a reasonable person of ordinary intelligence would give to the review's content, and considering the sentences within the proper context, this Court finds there are no defamatory statements.

---

[4] Plaintiffs' brief in opposition to the motion to dismiss specifically objects to Ly's fifth, sixth, and eight sentences. While the Court could limit its analysis to only these sentences since Plaintiffs fail to aver the remaining sentences are defamatory, the Court will assess each sentence for the sake of completeness.

When broken down to each component sentence,[5] Ly's review reads:

1. Not highly recommended for having parties, birthdays, or any type of events here because they will run out of food even though they say it's "unlimited" (you'll be lucky if you even get enough food to begin with).

2. A friend of ours planned a birthday dinner here a month in advance for her husband and a group of 40 people.

3. As promised, there will be unlimited food but drinks will be charged separately by the establishment.

4. As the night started, everyone's ordering drinks and having a good time until [sic] food started coming out.

5. There was countless number of carbs and veggie dishes of the same 3-4 items but when we had meats come out, it was literally 4 people to 2 pieces of chicken or 4 people to 1 piece of rib.

---

[5] Plaintiffs' brief in opposition to Ly's motion to dismiss takes issue with Ly's "pars[ing] out each of the 'discrete 14 sentences,'" arguing the statements when read as a whole constitute defamation. Ly Opp. Br., [Dkt. No. 106], at 4-5. The Court disagrees with Plaintiffs' view and their reading of Taj Mahal Travel, Inc. v. Delta Airlines, Inc., 164 F.3d 186 (3d Cir. 1998). To the extent Plaintiffs argue the Court's defamation assessment cannot include analysis of each challenged phrase or statement separate and apart from the entire statement, they are incorrect. The Court is called to assess each statement's content both at the individual level and holistically. The Court considers the statements as a whole, but this assessment is used to assess the statement's context – as Defendant Ly correctly points out.

The Court thus agrees with Defendant Ly's reading of Taj Mahal, as it stands for the proposition that courts do not consider allegedly defamatory phrases in isolation, but rather must also consider the context in which the statement is made. However, this consideration does not result in the conclusion that Plaintiffs suggest, namely that a collection of otherwise non-defamatory statements can somehow become defamatory when read as a whole – the total cannot be greater than the sum of its parts.

6. Let alone there wasn't even enough meats to be given to each person for them to say "we ran out". [sic]

7. After confronting the owner, he goes I understand this table didn't get it, but do understand what the other tables got (LOL Tf exactly), what does that have to do with the table that didn't get jack sh*t?

8. Mind you it was suppose [sic] to be unlimited food since it was a preset menu, but they "ran out."

9. Also to mention, the meats, portioned for mice, took nearly 45 mins to come out following the countless UNLIMITED amount of carb dishes (i [sic] get it [sic] restaurants that do this is [sic] trying to get you full before the meats come out), but again, the meats that came out wasn't even enough to begin with.

10. Finally, the bill came out close to $5000 for having mediocre drinks, unlimited carbs and grass, and 2 pieces of meat for 40 people to share.

11. After reducing the price, it came to 100 a person, in which [sic] still can't be justified for what was given to us.

12. At the end, following the dispute, they had the audacity to just bring two plates of ribs when everyone had already lost their appetite from waiting too long, and yes it was left there and no one ate anyone [sic] it.

13. Following the whole "party" many of us went and got pizza because we were obviously still hungry.

14. Def [sic] not a place to go with this type of hospitality.

Of these fourteen sentences, numbers 6, 7, 9, 11, and 14 are plainly opinions. Sentence 6 concerns Ly's opinion that the quantity of meat served was too small.[6] Sentence 7 concerns Ly's

---

[6] Plaintiffs take issue with sentence 6, arguing the sentence stands as a statement of fact, namely that Plaintiffs did not provide meat as promised. However, Ly's review plainly states,

opinion about his experience dining at Ardiente, expressing his feelings of dissatisfaction and insult.  Sentence 9 again concerns Ly's opinion about the quantity of the food, employing hyperbolic language, remarking there wasn't enough meat and that the meat was "portioned for mice."  Sentence 11 asserts Ly's opinion that the meal was overpriced – an entirely subjective view.  Sentence 14 expresses Ly's opinion that he does not recommend the restaurant.

These are all opinions expressing Ly's subjective belief that the food, service, and the restaurant overall were bad quality and overpriced.  These are not factual statements.  The average reader would understand Ly's review as a simple attempt to voice his disappointment, albeit with some hyperbolic or figurative language such as "meats[] portioned for mice."

As for sentences 2, 3, 4, and 13, the Court agrees with Ly's assessment that they are not defamatory, since they are mostly factual statements about the background leading up to the dinner and the party's post-dinner actions.  As none of the statements contain specific references to Plaintiffs, let alone false or defamatory statements about Plaintiffs, these sentences

---

"there wasn't even enough meats," making this is a subjective complaint about the quantity of food served.  What is enough meat for one person may not be enough meat for another person. This is not an objectively verifiable statement of fact, making it pure opinion.

are not defamatory.  Robles, 469 Fed. App'x at 109.  This point is further buttressed by the fact that Plaintiffs' opposition brief takes no issue with Ly's characterization of these statements as nondefamatory.

However, the Court notes that sentences 4 and 13 do contain opinions, noting: (1) Ly believed the party was having a good time until the food service, and (2) Ly believed the party was still hungry after the dinner because they went out for pizza. As sentences 4 and 13 may be interpreted as either fact or opinion, this supports the conclusion they are not actionable under a claim of defamation.  Lynch, 161 N.J. at 168. Furthermore, as sentences 4 and 13 present opinions and the sentences do not contain specific references to Plaintiffs, this issue is a merely academic question.

The remaining sentences of 1, 5, 8, 10, and 12 are mixed opinions containing both statements of fact and opinion. Sentence 5 claims "[t]here was [sic] [a] countless number of carbs and veggie dishes . . . but . . . [the] meats [were] . . . literally 4 people to 2 pieces of chicken or 4 people to 1 piece of rib."  Although sentence 5 contains factual allegations, the statement is plainly "[l]oose, figurative or hyperbolic language," and the facts alleged are likely unverifiable (the Court deems it virtually impossible that Plaintiffs possess even a scintilla of evidence capable of verifying the ratio of diners

27

to chicken and ribs), thus making it unactionable.  <u>Lynch</u>, 161
N.J. at 168 (citing Ward, 136 N.J. at 532).

Likewise, sentence 10, which includes the factual averment
that the bill was close to $5,000 as well as several opinions,[7]
also fails to rise to the level of an actionable defamatory
statement as Ly merely employed "[l]oose, figurative or
hyperbolic language" that is otherwise unverifiable.  <u>Id</u>.  Given
the context as a Yelp restaurant review, a reasonable reader
would clearly understand sentences 5 and 10 from the context
that Ly was expressing his opinion that the restaurant served
too many carb and veggie dishes and not enough meat, and charged
too much money, making sentences 5 and 10 more or less
statements that can fairly be construed as either fact or
opinion making them unactionable and nondefamatory.  <u>Id</u>.

Sentence 1 is a closer question as it is debatable whether
it contains both a statement of fact and opinion.  "Not highly
recommended for having parties, birthdays or any type of events
here," is definitively an opinion.  However, this is followed by
an arguably factual averment that such events "will run out of
food even though they say it's 'unlimited,'" and the sentence is

---

[7] Claiming that Ardiente served "mediocre drinks, unlimited carbs
and grass, and 2 pieces of meat for 40 people to share," is
clearly loose, figurative or hyperbolic opinion expressing Ly's
dissatisfaction with the quality and quantity of food served by
Ardiente.

closed with the opinion that "you'll be lucky if you even get enough food to begin with."

Parsing this sentence and reading it in context leads the Court to reject the statements as anything more than an opinion posing a hypothetical conclusion utilizing hyperbolic language. Another way of reading this sentence is: "if one has an event at Ardiente, then they will run out of food, which makes the venue not recommended."  There is no way of verifying the statement as it is a hypothetical and, more importantly, when read in context, can be interpreted as mere opinion.  See Lynch, 161 N.J. at 167-68 (statements are nondefamatory if they can be construed as either fact or opinion, which is interpreted based upon the statement's fair and natural meaning from a reasonable reader).

Here, a reasonable reader would understand from the context of the review that Ly was merely expressing his opinion that the restaurant is not recommended as they do not serve enough food. And, as a Yelp restaurant review, the context of sentence 1 supports the conclusion that it is a nondefamatory opinion. Moreover, as the sentence is capable of being construed as fact or opinion, the Court concludes it is not actionable pursuant to the Supreme Court of New Jersey's ruling in Lynch.

Facially, the remaining sentences of 8 and 12 appear to consist of largely factual statements.  However, a closer review

of the sentences in the context of the review as a whole leads the Court to conclude that these too are unactionable, nondefamatory statements.  In essence, sentence 12 claims Ardiente "had the audacity" to bring out two plates of ribs after previously claiming to run out, and as the diners lost their appetites from waiting too long, no one ate the ribs. Read against the other sentences, Sentence 12 contradicts Ly's other sentences, namely sentence 8, which claims the restaurant ran out of food, and sentence 13, which claims the diners went out for pizza because they were obviously still hungry.  It is therefore illogical to read sentence 12 on its face as a statement of fact, given that the preceding and subsequent sentences directly contradict the averments.

Instead, sentence 12 more accurately reads as an opinion that Ly was offended and frustrated by Ardiente bringing out ribs after claiming to run out and because, in his opinion, the diners had waited too long for food to served.  The sentence thus can be interpreted as Ly's opinion that the restaurant had bad service and did not serve enough food or served it too late in the meal.  This reading comports with the Ly's other sentences, which all present the same opinion: not enough food and bad service.  A reasonable reader, understanding the context of sentence 12 would therefore appreciate that the sentence expresses Ly's opinion.

Likewise, a reasonable reader would not take sentence 8 as a pure statement of fact, which essentially claims the restaurant was supposed to serve unlimited food but ran out.  As with the analysis of sentence 12, Ly does not literally claim Ardiente ran out of food when it was supposed to serve unlimited food; after all, how could the restaurant run out when it served countless, unlimited carb dishes, as per sentences 9 and 10, and two subsequent plates of ribs, as per sentence 12.  Sentence 8, therefore, would be interpreted by a reasonable reader as Ly's opinion, again expressing his dissatisfaction with the restaurant and claiming Ardiente did not serve enough meat.  Moreover, as the Court has noted with other sentences, the verifiability of this sentence is highly unlikely under the circumstances presented in the record.  Accordingly, these sentences are not actionable under Lynch.

In sum, in assessing the Ly review's content both as a whole and at the individual sentence level, as well as the verifiability of any arguably factual statements contained in the Ly review, the Court finds that the review lacks a sufficient basis to maintain Plaintiffs' claim of defamation against Ly.

**b.  Plaintiffs' Claim for Trade Libel Against Ly**

Plaintiffs argue they sufficiently plead a claim for trade libel, thus Ly's motion to dismiss should be denied.  While Ly

does not directly address the issue of trade libel, based on his arguments regarding defamation, the Court finds he presents a valid basis for dismissal.[8]

Ly's failure to directly address trade libel can be explained by Plaintiffs' failure to properly plead such a claim. Plaintiffs' Amended Complaint asserts a cause of action for defamation per se and trade libel. However, these are generally independent claims and Plaintiffs fail to demonstrate, let alone argue, that the claims can be muddled together based on the present record. See Dairy Stores, Inc., 104 N.J. at 133-35; see also Gillon v. Bernstein, 218 F. Supp. 3d 284, 294 (D.N.J. 2016). The Court could view this action as merely one for defamation, as this view is entirely supported by the record because Plaintiffs repeatedly emphasize this is a defamation action. Putting aside this obvious deficiency, the Court nonetheless has assessed the Amended Complaint and finds Plaintiffs fail to plead a claim of trade libel.

In New Jersey, a claim of trade libel requires that Plaintiffs prove: "(1) publication, (2) with malice (3) of false allegations concerning plaintiff's property or product (4)

---

[8] In fact, no party articulates the elements of trade libel or, beyond Plaintiffs' conclusory averments, claims the record even presents trade libel. However, Ly's arguments on nondefamatory opinions and the verifiability of his review also applies to the claim of trade libel and presents a basis for the Court to grant dismissal.

causing special damages, i.e., pecuniary harm." <u>Intervet, Inc.</u>
<u>v. Meleutis, Ltd.</u>, 2016 WL 740267, at *6 (D.N.J. Feb. 24, 2016)
(quoting <u>Sys. Operations, Inc. v. Sci. Games Dev. Corp.</u>, 555
F.2d 1131, 1140 (3d Cir. 1977).  In particular, "[s]pecial
damages is an 'essential' element of trade libel[,]" <u>Wolfe v.</u>
<u>Gooding & Co., Inc.</u>, 2017 WL 3977920, at *4 (D.N.J. Sept. 11,
2017) (quoting <u>Mayflower Transit, LLC v. Prince</u>, 314 F. Supp. 2d
362, 379 (D.N.J. 2004), and "must be in the form of pecuniary
harm and must be pled with particularity[.]"  <u>Canfield Sci.,</u>
<u>Inc. v. Melanoscan, LLC</u>, 2017 WL 2304644, at *7 (D.N.J. May 25,
2017).

"To show special damages, Plaintiff must 'allege either the
loss of particular customers by name, or a general diminution of
business, and extrinsic facts showing that such special damages
were the natural and direct result of the false publication.'"
<u>Gillon</u>, 218 F. Supp. 3d at 298 (quoting <u>Bocobo v. Radiology</u>
<u>Consultants of S. Jersey, P.A.</u>, 477 Fed. App'x 890, 901 (3d Cir.
2012)).

> When predicating a damages claim on the
> general diminution in business, Plaintiff
> must prove 'facts showing an established
> business, the amount of sales for a
> substantial period preceding publication,
> the amount of sales for a [period]
> subsequent to the publication, facts showing
> that such loss in sales were the natural and
> probable result of such publication, and
> facts showing the plaintiff could not allege

> the names of particular customers who
> withdrew or withheld their custom.'

Gillon, 218 F. Supp. 3d at 299 (quoting Mayflower Transit, LLC,

314 F. Supp. 2d at 378).  "General, implied, or presumed damages

of the kind available in personal defamation actions do not

satisfy the requirement of special damages needed for

disparagement causes of action."  Patel v. Soriano, 369 N.J.

Super. 192, 249 (App. Div. 2004).

   Assessing the elements of trade libel, the Court finds that

Plaintiffs' fail to plead a *prima facie* case.[9]  In particular,

the Court finds Plaintiffs have not pled special damages with

---

[9] Instead of supporting the elements of trade libel through
factual allegations, Plaintiffs merely plead bald assertions and
legal conclusions.  See, e.g., Amended Complaint, [Dkt. No. 55],
¶ 104, ("These statements were made maliciously and willfully
and were intended to cause harm to Plaintiffs' business and
reputation"); ¶ 106 ("These statements were made maliciously and
willfully and were intended to cause harm to Plaintiffs'
personal and professional reputation"); ¶ 111 ("As a result of
the Non-Phung Defendants' acts, Plaintiffs have suffered
irreparable damage to its reputation and further damages in the
form of lost sales and profits, in an amount to be determined at
trial"); ¶¶ 31, 80 (the Ly and Ching reviews "harm[ed]
Plaintiffs' reputation and causing them to lose revenue"); ¶ 84
(the Ly and Ching reviews posted "to interfere with Plaintiffs'
contractual relationships with its customers and vendors . . .
by inducing Plaintiffs' customers and vendors and prospective
diners to cease doing business with Plaintiffs); ¶ 85 ("several
diners have claimed to have read the reviews and have called or
messaged to inquire about the truth of the false statements
therein and . . . cancelled scheduled appointments with
Plaintiffs"); ¶ 86 (the Ching and Ly reviews caused "a number of
Plaintiffs' customers (or prospective customers) [to] refuse to
patronize and/or continue to patronize Plaintiffs' business");
and ¶ 87 (the reviews caused Plaintiff Ardiente to close).

the requisite level of particularity by merely alleging generally that Ardiente lost customers, prospective customers, and vendors.  See Gillon, 218 F. Supp. 3d at 298-99; see also Intervet, 2016 WL 740267, at *6 (dismissing trade libel counterclaim where defendant alleged "[a]s a direct and proximate result of the trade libel of [Plaintiff], [Defendant] has incurred and will continue to suffer damages") (internal quotation marks omitted); see also Zim v. Seruga, 2006 WL 2135811, at *11 (D.N.J. July 28, 2006) (dismissing trade libel claim where plaintiff stated "a general allegation that the statements published on the website 'caused Plaintiffs to sustain damages'").  Plaintiffs neither present the loss of particular customers by name, demonstrate a general diminution of their business, nor explain how the Ly review - from a clearly disgruntled customer - could cause the general and broad claims of damages Plaintiffs assert.  Thus, they have failed to allege sufficient facts to make out a plausible claim for special damages.[10]

---

[10] As noted above, proving a general diminution in business requires Plaintiffs to prove the existence of an established business and present sales figures for a "substantial period preceding publication" against the sales figures for the period after the publication.  As this case concerns a new restaurant that had just opened (hardly an established business) and closed within 9 months of the review, it is highly unlikely that the restaurant existed long enough for Plaintiffs to prove a general diminution.  What is clear is that Plaintiff has failed to

More importantly, since the Court has found that the Ly review constitutes an opinion not capable of being proven false, Plaintiffs' trade libel claim must fail as a matter of law.  "A plaintiff alleging trade libel 'must demonstrate that Defendant's statements were false or that they were written with reckless disregard for the truth or falsity.'" Read v. Profeta, 397 F. Supp. 3d 597, 651 n.37 (D.N.J. 2019) (quoting Mayflower Transit, LLC, 314 F. Supp. 2d at 378).  In order for Plaintiffs to prevail on the trade libel claim, Ly's statements may not be expressions of opinion.  NXIVM Corp. v. Sutton, 2007 WL 1876496, at *7 (D.N.J. June 27, 2007) (citing Cassidy v. Merin, 244 N.J. Super. 466, 479 (App. Div. 1990); Themed Restaurants, Inc., 801 N.Y.S.2d at 39-40).

Moreover, as explained by this Court in NXIVM Corp., the New Jersey Supreme Court has held "[i]nsofar as defenses to product disparagement are concerned, a qualified privilege should exist whenever it would exist for a defamation action . . . it follows that the right to make a statement about a product should exist whenever it is permissible to make such a statement about the reputation of another." NXIVM Corp., 2007 WL 1876496 at *7 (quoting Dairy Stores, Inc., 104 N.J. at 137; and citing Guerrero v. Carva, 779 N.Y.S.2d 12, 17 (1st Dep't 2004)

allege sufficient facts to make out a plausible claim for special damages.

(recognizing constitutional protection for statements of opinion); and citing Penn Warranty Corp. v. DiGiovanni, 810 N.Y.S.2d 807, 814 (N.Y.Sup.2005) (noting that courts have been "loathe to stifle's one's criticism of goods or services")).

Therefore, for the reasons expressed above in the Court's defamation analysis, the Ly review does not form the basis for a valid claim of trade libel. See Read, 397 F. Supp. 2d at 653 (dismissing the trade libel claim because the statement at issue "is more of a legal conclusion or an opinion-based characterization of the facts, rather than a statement of fact that itself could be verified or disproved") (citing Ward, 136 N.J. at 530 (emphasizing the distinction between actionable statements that are capable of verification and "rhetorical hyperbole" and "statements that are in form statements of opinion . . . which cannot reasonably be understood to be meant literally and seriously and are obviously mere vituperation and abuse.") (citation omitted)); see also Dairy Stores, Inc., 104 N.J. at 137.

Accordingly, the Court will dismiss Plaintiffs' claim of trade libel against Ly. The Court's ruling is twofold: (1) Plaintiffs have not plead the necessary elements to establish a false allegation concerning Plaintiffs' property and (2) have failed to allege sufficient facts to establish special damages.

### c.    Plaintiffs' Claim of Tortious Interference
####        Against Ly

Plaintiffs also bring a claim for tortious interference with contractual relations and prospective contractual relations.  Ly argues the claim fails as a matter of law and the Court should grant dismissal.

Here, Plaintiffs again conflate separate and distinct claims into one, as the Amended Complaint alleges "Tortious Interference with Contractual Relations and Prospective Contractual Relations"; yet the parties' papers addressing the motions to dismiss concern only a claim for "tortious interference with prospective economic advantage."  Nonetheless, like the claim for defamation, the Court, regardless of the theory upon which it premised, agrees with Ly that Plaintiffs' claim fails as a matter of law.

Even after an amended complaint and an unsuccessful second amended complaint, Plaintiffs have failed to identify which, if any, contract or contracts were interfered with as a result of the Yelp reviews.  Despite having these opportunities to present a *prima facie* case of tortious interference with contractual relations, the amended complaint fails to articulate a single existing contract, let alone attach one as an exhibit.  The Court has thoroughly reviewed the pleadings and finds Plaintiffs presents only bald assertions and legal conclusions as to this

theory of liability however framed.  As the existence of a contract between Plaintiffs and others is a prerequisite to this claim, there is nothing before the court to support a claim for tortious interference with contractual relations.  Dello Russo v. Nagel, 358 N.J. Super. 254, 268 (App. Div. 2003) (to set forth a cognizable claim for tortious interference with contractual relations, Plaintiffs must establish: "(1) actual interference with a contract; (2) that the interference was inflicted intentionally by a defendant who is not a party to the contract; (3) that the interference was without justification; and (4) that the interference caused damage"); see also Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739, 751–752 (1989).

Likewise, a claim for tortious interference with prospective economic advantage also fails as presented.  To state a valid claim for tortious interference under New Jersey law, Plaintiffs must establish "(1) a reasonable expectation of economic advantage to plaintiff; (2) interference done intentionally and with malice; (3) causal connection between the interference and the loss of prospective gain; and (4) actual damages."  Luttmann v. Tiffany & Co., 2009 WL 197520, at *2 (D.N.J. Jan. 26, 2009) (quoting Varrallo v. Hammond, Inc., 94 F.3d 842, 848 (3d Cir. 1996)).  Yet Plaintiffs allege no specific facts in support of any of these elements and instead

rely on legal conclusions that cannot form the basis for stating a plausible claim.  If such a claim is plausible, Plaintiffs should have presented specific examples of diners, patrons, customers, prospective diners, or vendors who Plaintiffs had actual or a reasonable expectation of economic advantage with, let alone how the Yelp restaurant review interfered and caused them to lose this opportunity.  This pleading deficiency is fatal.

Moreover, the claim, regardless of the underlying theory, must be dismissed as Defendant Ly correctly points out since, as with trade libel, "when a tortious interference claim 'is based on allegedly defamatory statements and the defamation cause of action fails for lack of evidentiary support, the tortious interference claim necessarily fails as well.'"  Perez v. Factory Direct of Secaucus, LLC, 2013 WL 5770734, at *7 (D.N.J. Oct. 23, 2013) (quoting Prof'l Recovery Servs., Inc. v. Gen. Elec. Capital Corp., 642 F. Supp. 2d 391, 408 (D.N.J. 2009)).  Because Plaintiffs' tortious interference claim is predicated on the Ly review, and the Court finds the Ly review to be an unactionable nondefamatory statement, the Ly review cannot form the basis for a valid claim of tortious interference.  See, e.g., LoBiondo v. Schwartz, 323 N.J. Super. 391, 415-17 (App. Div. 1999) (dismissing a claim for tortious interference, after finding the challenged statement as nondefamatory, because "if

the alleged defamation is not actionable, then its consequences are also not actionable because the conduct that caused those consequences was privileged"); Bainhauer v. Manoukian, 215 N.J. Super. 9, 47-48 (App. Div. 1987) ("Proof or failure of proof of the operative facts of the defamation count would, therefore, completely comprehend the malicious interference cause.  Thus, if no abuse of privilege is found, then the 'malicious' predicate of the interference count would also fail."); Binkewitz v. Allstate Ins. Co., 222 N.J. Super. 501, 537 (App. Div. 1988) (finding qualified privilege applies to tortious interference claim based on the defamatory statements).

Therefore, the Court will dismiss Plaintiffs' claim of tortious interference.  While Plaintiffs could potentially cure their pleading deficiencies by asserting the missing details (existence of specific contract(s) with third parties, patrons, vendors, etc. who cancelled or withheld their business and patronage after and as a result of the Ly review), the claim must fail as a matter of law because the Ly review is an unactionable nondefamatory statement of opinion.

**2.  Ching's Motion to Dismiss Pursuant to Rule 12(b)(2), and Plaintiffs' Requests for Jurisdictional Discovery or Cross Motion to Transfer**

Ching argues that since the Court lacks personal jurisdiction over him, Plaintiffs' claims against Ching must be dismissed pursuant to Rule 12(b)(2).  Ching argues he resides in

Pennsylvania, works in Pennsylvania, and the activities that gave rise to Plaintiffs' claims occurred in Pennsylvania. Ching MTD, [Dkt. No. 87], at 14-16; Declaration of Kevin Ching, [Dkt. No. 87-1], at ¶¶ 1-6. Ching further avers that he has no: (1) "continu[ous] contact with New Jersey," (2) "property or assets located in New Jersey," (3) "interaction[s] with the State of New Jersey," (4) activities "otherwise engaging with New Jersey," and (5) he "has done absolutely nothing which could be considered availing himself of New Jersey." Id. at ¶¶ 3-4; Ching MTD, [Dkt. No. 87], at 15.

Ching notes the only connection this matter has to New Jersey is the fact that Plaintiff Sciore was, until recently, a New Jersey citizen, and, until this lawsuit, Ching lacked any knowledge of how dining at Ardiente could possibly implicate New Jersey.[11] Id.; Amended Complaint, [Dkt. No. 55], at ¶ 5. Ching claims that because he lacks any contacts with New Jersey he would have no expectation of being brought before a New Jersey court "for visiting and allegedly reviewing a restaurant that was located in Pennsylvania." Id. at 16. Accordingly, Ching argues the Court lacks both specific and general jurisdiction, making dismissal appropriate because the Court lacks personal

_____

[11] Sciore has since moved to Florida and claims citizenship of that state. Proposed Second Amended Complaint, [Dkt. No. 127-2], at ¶ 5.

jurisdiction over him.  In response, Plaintiffs argue there is specific jurisdiction but admit there is no general jurisdiction.  Ching Opp. Br., [Dkt. No. 98-6], at 2.

Jurisdiction, therefore, turns on whether the Court has specific jurisdiction over Ching.  In cases of intentional torts, the court may exercise personal jurisdiction when the Calder test is satisfied.  Calder v. Jones, 465 U.S 783 (1984);[12] see also Marten v. Godwin, 499 F.3d 290, 297 (3d Cir. 2007).  Defendants who satisfy the Calder test do not have to satisfy the elements of the traditional test of personal jurisdiction.  See IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 265 (3d Cir.

[12] In Calder, petitioners, both Florida residents, wrote a libelous article about a California resident, causing harm to her reputation in California.  "The article was drawn from California sources, and the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California."  Calder, 465 U.S. at 788-89.  In fact, petitioners' "intentional, and allegedly tortious, actions were expressly aimed at California."  Id. at 789.  The Court thus found that petitioners wrote an article knowing its "potentially devastating impact upon respondent" in California.  Id.  "In sum, California [wa]s the focal point both of the story and of the harm suffered."  Id. at 789.  Accordingly, the Supreme Court in Calder held that jurisdiction was proper "because of the[ ] intentional conduct in Florida [was] calculated to cause injury to respondent in California."  Id. at 791.

A proper application of Calder supports an entirely different outcome on this record.  The so-called defamatory restaurant review was written about a Pennsylvania restaurant, which is the state where any alleged harm to the restaurant's reputation would be primarily felt.  There is nothing in the record to show New Jersey was either the focal point of the review or the place where any harm was suffered within the meaning of Calder.

1998) (reasoning that a party that satisfied the Calder test may avail itself of a court's personal jurisdiction even if the party would not satisfy the traditional test); see also Marten, 499 F.3d at 297.

Under this test, a plaintiff may show specific personal jurisdiction if he or she demonstrates: (1) the defendant committed an intentional tort; (2) "the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort"; and (3) the defendant expressly aimed his or her tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity. IMO Indus., Inc., 155 F.3d at 265-66; see also Marten, 499 F.3d at 297.

Although Plaintiffs note the Calder elements are the appropriate standard to test for personal jurisdiction, they fail to articulate an argument as to how each element is satisfied. Rather, Plaintiffs only address the "express aiming" requirement, claiming Ching aimed the allegedly defamatory Ching review at Ardiente and Ardiente's owner, namely Sciore, a New Jersey resident. Plaintiffs argue the Court should discredit Ching's claims of ignorance as to Ardiente and Sciore's ties to New Jersey since, as Plaintiffs aver, Sciore is publicly well-known and there are at least two online articles available

44

noting Sciore as the restaurant's owner.[13]  Plaintiffs thus claim
that because information about Sciore's relation to New Jersey
was publicly available, Ching should have been more diligent
before defaming a New Jersey citizen and should thus face a New
Jersey court.

In opposition, Ching reiterates his prior arguments that
both he and the Ching review have no connection to New Jersey.
In assessing the Calder elements, Ching argues Ardiente was a
Pennsylvania restaurant and therefore Pennsylvania is the focal
point of the restaurant's reputational interest.  Any harm felt
by Ardiente from Ching's review was thus directed at and felt in
Pennsylvania, not New Jersey – a jurisdiction implicated only by
virtue of Sciore's domicile (who was not mentioned by name in

---

[13] Plaintiffs did not provide the Court with copies of the
articles; therefore, the Court is unable to assess the articles'
content and supposed publication dates (which Plaintiffs claim
as occurring prior to the Ching review).  Moreover, as Ching
notes, Plaintiffs fail to argue the articles mention Sciore as a
New Jersey citizen, and, according to Ching, the articles do not
in fact contain such information.

In addition to rejecting Plaintiffs' arguments premised on the
articles, and for the sake of completeness, the Court similarly
rejects Plaintiffs' argument that Sciore is a well-known New
Jersey citizen making the Ching review's reference to Ardiente's
owner an intentional attack of a New Jersey citizen meant to
harm Sciore in New Jersey.  The Court rejects the argument as a
bald assertion, which is buttressed by the fact Plaintiffs
provide no factual or legal support to the claim.  This is not
surprising as Plaintiffs' also assert that "it would be
completely implausible for Plaintiff Sciore . . . to be
considered a public figure."

the review).  As the activities underling Plaintiffs' claims
occurred in Pennsylvania, Ching claims the Court lacks personal
jurisdiction under Calder.  The Court agrees with Ching.

Even assuming Plaintiffs meet the first Calder element of a
plausible claim against Ching of defamation, trade libel, and
tortious interference, see Remick v. Manfredy, 238 F.3d 248, at
258 (3d Cir. 2001) (noting that the mere allegation of
defamation satisfies the first element), Plaintiffs fail to
demonstrate the remaining two elements.  Ardiente was a
Philadelphia restaurant.  By definition, as a restaurant review,
the Ching review was directed at Ardiente.  If Ardiente lost any
customers as a result of the Ching review, as is thinly alleged
in the complaint, said diners would have been in Philadelphia,
Pennsylvania.  Thus a court in Pennsylvania, not New Jersey, has
personal jurisdiction over the claims against Ching.  This is
true because personal jurisdiction is only proper if the forum
state is "the focus of the activities of the defendant out of
which the suit arises."  Marten, 499 F.3d at 298.

Beyond the obvious fact that Pennsylvania is the focal
point, there are no facts that show Ching's review was
specifically targeted at New Jersey.  Nothing is alleged in the
Amended Complaint to even suggest Ching's review targeted Sciore
or that Ching knew Sciore to be a New Jersey citizen.  Thus, the
"express aiming" argument advanced by Plaintiffs directs the

46

Court to dismiss for lack of jurisdiction, since the specific
facts here fail to show Ching targeted New Jersey.  Id.;
Christie v. Nat'l Inst. for Newman Stud., 258 F. Supp. 3d 494,
504 (D.N.J. 2017) ("[I]n tort cases that involve 'harmful
communications, courts have held that the 'express aiming'
requirement of the 'effects test' remains satisfied when the
defendant is alleged to have engaged in wrongful conduct
targeted at a plaintiff whom the defendant knows to be a
resident of the forum state'") (citations omitted).

At best, Plaintiffs argue that since the effect of harm was
felt by Sciore in New Jersey, then this alone is enough to
establish specific jurisdiction.  However, this argument was
already considered and expressly rejected by the Third Circuit
in IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 261-63 (3d Cir.
1998).  There, the Third Circuit considered Calder and various
cases from other Circuit courts, finding they "all stand for the
proposition that the mere allegation that the plaintiff feels
the effect of the defendant's tortious conduct in the forum
because the plaintiff is located there is insufficient to
satisfy Calder."  Id. at 263.  The prevailing issue throughout
this case, as in IMO Indus., Inc., is that "the plaintiffs
failed to point to other actions that adequately demonstrated
that the defendants targeted (or "expressly aimed" their conduct
at) the forum, and thereby showed that the forum was the focal

47

point of the tortious activity." Id.  Therefore, Plaintiffs do
not demonstrate the second and third elements of the Calder
test, and the Court cannot exercise specific jurisdiction over
Defendant Ching.

Seeming to recognize the weaknesses inherent in their
claims of specific jurisdiction over Ching, Plaintiffs make two
last-ditch requests as alternatives to dismissal of this action.
First, Plaintiffs request that the Court transfer venue to the
United States District Court for the Eastern District of
Pennsylvania, pursuant to 28 U.S.C. § 1631.  Cross Motion to
Transfer, [Dkt. No. 98], at 14-16.  Section 1631 authorizes a
transfer of venue for lack of personal jurisdiction, providing
that a "court shall, if it is in the interest of justice,
transfer such action or appeal to any other such court . . . in
which the action or appeal could have been brought at the time
it was filed."  28 U.S.C. § 1631.  However, dismissal in lieu of
transfer best serves "the interests of justice" where it is
clear that transfer would be "a futile waste of judicial and
party resources."  United States v. Foy, 803 F.3d 128, 136 n.7
(3d Cir. 2015); see also Qayyum v. Tillerson, 2018 WL 2095603,
at **3-4 (D.N.J. May 7, 2018).

Plaintiffs contend that Ching would be subject to personal
jurisdiction in Pennsylvania because he resides there and the
events underlying the case occurred in Philadelphia, thus there

would be no issue of personal jurisdiction.  Plaintiffs also note that transfer is in the interests of justice since Plaintiffs timely initiated this action in New Jersey and anything short of transfer (namely dismissal) will result in a time bar to Plaintiffs' ability to bring a timely suit in the United States District Court for Eastern District of Pennsylvania.[14]  In opposition, Ching argues the Court should dismiss the case and deny the motion to transfer since "all the claims of Plaintiffs lack merit and should be dismissed on the merits."  Ching emphasizes that transferring to the Eastern District of Pennsylvania will only prolong the inevitable, namely dismissal of Plaintiffs' frivolous claims.

The Court, again, agrees with Ching.  Although, the Court abstains from ruling on the merits of Ching's Rule 12(b)(6) motion as the Court lacks jurisdiction over him, the Court may consider whether transfer would be futile.  See Qayyum, 2018 WL 2095603, at **3-4.  Here, transfer of this action would be futile because the allegedly defamatory Ching review is likely

---

[14] The Court notes that Plaintiffs filed an action in the United States District Court for the Eastern District of Pennsylvania against Defendants Ching and Thao Tran, "asserting similar claims as set forth herein."  That action is entitled Sciore v. Tran, Civil Case No. 2:21-cv-04403-MMB.  The Court will not comment on that matter any further, as resolution of that case is left to the sound discretion of Judge Baylson.  However, the mere existence of that case calls into question Plaintiffs' argument that dismissal will cause a time bar that unjustly prejudices their ability to assert a claim against Ching.

to found to be nothing more than opinion - a defense that
necessitates dismissal.  Id. (Ruling transfer "would clearly be
futile," since the plaintiff's claim fails as a matter of law,
"making any curative amendment unlikely."  The Court, further
held that "because the remaining defendants named in the
Complaint have not been served, and it is not apparent on the
face of the Complaint that personal jurisdiction exists over
those defendants in any forum to which transfer of the action
against Defendant Price would appropriate, it is likely that the
severance of the case, and the maintenance of separate
proceedings with substantially overlapping issues of law and
fact would give rise to judicial inefficiency.").

Much of the Court's analysis above regarding the Ly review
is applicable to the Ching review, since the Ching review's
contents, context, and verifiability makes the statement highly
unlikely to rise to the level of defamation and thus the other
claims too are likely to fail.[15]  Even a cursory examination of
the Ching review evinces the futility of Plaintiffs' claims.

For example, breaking the Ching review into its component
sentences shows:

    1. Had high expectations after perusing their menu and
       reading prior reviews beforehand.

---

[15] As explained more fully above in the Court's analysis of the
context of restaurant reviews and Yelp reviews, the context of
the Ching review, as a Yelp restaurant review, is unlikely to
support a finding of defamation.

2. However, not only was I disappointed but insulted by how our party was treated from the owner himself.

3. Food itself was mediocre and too salty to be palatable.

4. Our first 5-6 courses of the tasting menu consisted of underwhelming veggie or carb dishes.

5. The last two courses were supposed to be the short ribs and Cornish hen but they ran out after serving only a few morsels of each.

6. How this restaurant failed to prepare for this event with a month's notice is beyond me and will steer clear from this place indefinitely.

Of these six sentences, numbers 1, 2, 3, 4, and 6 are opinion.  Sentence 1 concerns Ching's opinion regarding his "expectations" about Ardiente.  Sentence 2 concerns Ching's opinion about his experience dining at Ardiente, expressing his feelings of disappointment and insult.  Likewise, Sentence 3 concerns Ching's opinion about the poor quality of food, remaking it was "mediocre and too salty to be palatable."  Sentence 4 addresses the food's quality, remarking the courses were "underwhelming veggie or carb dishes."  Sentence 6 expresses a rhetorical question, again demonstrating Ching's frustration with the dining experience.[16]  Not one of these

---

[16] Ching's phrase, "How this restaurant failed to prepare for this event with a month's notice is beyond me" is not defamatory because it is an opinion premised upon the earlier sentence that Ardiente ran out of short ribs and Cornish hens.  See Kotlikoff, 89 N.J. at 72-73 (holding a defendant will not be held liable for an opinion that is "accompanied by its underlying nondefamatory factual basis").  Although Plaintiffs counter that

statements, taken on their own, expresses a factual statement that can be objectively verified.  Rather, these are all subjective opinions expressing Ching's belief that the food, service, and dining experience overall were bad quality.  Absent verifiable facts, a reviewing court would find Ching's review as an expression of his subjective opinion, albeit with some hyperbolic language, as in the phrase "too salty to be palatable."

---

sentence 6 contains statements of fact that are objectively verifiable, this Court is unpersuaded.  Instead, a transferee court would likely determine that the statement includes language that is ostensibly hyperbolic (of course Ching is not claiming the restaurant totally failed to prepare), and, when read in full context with the other sentences as a restaurant review posted on Yelp, an ordinary reader would understand that the sentence means Ching opined that the restaurant did not prepare enough because it did not serve enough food – which is a subjective opinion.  See Lynch, 161 N.J. at 167-68 (finding statements to be nondefamatory if it can be construed as either fact or opinion, which is interpreted based upon the statement's fair and natural meaning from a reasonable reader).

Moreover, there is nothing alleged in the Amended Complaint to show the falsity of this statement, rendering it nondefamatory.  The Amended Complaint does not claim Plaintiffs were fully prepared for the party, such that Ardiente ordered, prepared, and served each diner a full portion of short rib and Cornish hen.  Further, given the passage of time between Ching's posting of the review on Yelp and Ardiente's closure to the present, Plaintiffs will likely be unable to prove the restaurant did not run out of short ribs and Cornish hen the night of the birthday dinner (and thus prove there was enough food and the restaurant prepared enough for the event).  Therefore, even if sentence 6 contains statements of fact, said statements are unverifiable.  See Lynch, 161 N.J. at 167.

In contrast, sentence 5 uniquely stands out as it not pure opinion like the others.  There, Ching states, "The last two courses were supposed to be the short ribs and Cornish hen but they ran out after serving only a few morsels of each."  Unlike the other sentences, sentence 5 is a mixed opinion as it contains both statements of fact and opinion.  There are arguably two statements of fact: (1) "the last two courses were supposed to be the short ribs and Cornish hen," and (2) "but they ran out after serving" some short ribs and Cornish hen.

While such statements are capable of being proven true or false, a review of the Amended Complaint fails to demonstrate any averments of fact to undermine the validity of these facts. Plaintiffs baldly claim "[i]t is not possible that the allegations in the Kevin C. Defamatory Review are true. Plaintiff Ardiente provided the services and goods for which it was hired, namely a tasting menu for a private birthday party. The food provided was palatable."  Amended Complaint, [Dkt. No. 55], at ¶ 81.  Thus, there is nothing alleged to show the falsity of the statement, making it nondefamatory.  Even putting aside the lapse in time and the fact that Ardiente closed months after the review was written, a court is still unlikely to find Plaintiffs capable of proving that the restaurant did not run out of short ribs and Cornish hen the night of the birthday dinner.  Therefore, the phrase is an unverifiable statement of

fact that cannot constitute an actionable basis for defamation. See Lynch, 161 N.J. at 167.

Further supporting this interpretation of sentence 5 as a nondefamatory statement is the fact that it contains Ching's opinion regarding the amount and portions of short ribs and Cornish hens served (namely, "only a few morsels of each"). This language is ostensibly hyperbolic, and, when read in full context as a restaurant review posted on Yelp, an ordinary reader would likely understand that the sentence means the restaurant did not serve enough food – which is a subjective opinion. See Lynch, 161 N.J. at 167-68 (finding a statement to be nondefamatory if it can be construed as either fact or opinion, which is interpreted based upon the statement's fair and natural meaning from a reasonable reader). Accordingly, a court is likely to find that the Ching review contains only opinion, making it an inapposite basis for defamation.

Since the Ching review is not defamatory, and for the reasons explained above regarding the Ly review, the Ching review cannot also support an actionable claim of trade libel or tortious interference. Transfer, therefore, is not in the interest of justice since the claims are clearly futile. Dismissal is the only appropriate remedy for the Court's lack of personal jurisdiction over Defendant Ching.

Second, Plaintiffs ask for an opportunity to conduct jurisdictional discovery, arguing there may be a basis for jurisdiction because there may be additional information regarding Ching's attempt to target Plaintiffs.[17]  However, to obtain leave to conduct jurisdictional discovery, a plaintiff must present "factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite contacts between [the party] and the forum state.'" Eurofins Pharma US Holdings v. BioAlliance Pharma SA, 623 F.3d 147, 157 (3d Cir. 2010) (quoting Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 455 (3d Cir. 2003) (alteration in original)).

Here, Plaintiffs have not made this showing.  Plaintiffs fail to allege Ching has any contacts with New Jersey, let alone demonstrate with particularity what limited discovery is likely to reveal.  Given Ching's representations regarding his lack of New Jersey contacts and based on the Court's determination that Plaintiffs' tort claims regarding the Ching review are futile, any fishing expedition into jurisdictional discovery is frivolous.  Toys "R" Us, Inc., 318 F.3d at 456 (holding that

_____

[17] Specifically, Plaintiffs seek discovery regarding "(1) Defendant's personal contacts in New Jersey, (2) Defendant's business contact in New Jersey, (3) if Defendant had communications with anyone in [sic] about Plaintiffs, (4) Defendant's blog posts, websites, LinkedIn, or private and/or direct messaging, referring to Plaintiffs or Plaintiffs [sic] services and/or business[,] and (5) Defendant's Internet search history regarding Plaintiffs."

although the plaintiff bears the burden to present facts to support personal jurisdiction, courts "are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous'"). Thus, the Court will not grant Plaintiffs' request to conduct jurisdictional discovery.

## **CONCLUSION**

For the foregoing reasons, Defendant Ly's Rule 12(b)(6) motion will be granted. Defendant Ching's motion to dismiss pursuant to Rule 12(b)(2) will also be granted. Plaintiffs' cross motion to transfer their claims against Ching will be denied.

An appropriate Order will follow.


Date: <u>March 30, 2022</u>          <u>s/ Noel L. Hillman</u>
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.